# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ROBIN CRAFT,**

                Plaintiff,

        **v.**

**PRUDENTIAL INSURANCE COMPANY
OF AMERICA, *et al.*,**

                Defendants.

                                  **Case No. C2-CV-03-1007**
                                  **JUDGE GREGORY L. FROST**
                                  **Magistrate Judge King**

## <u>ORDER</u>

This is an Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., case wherein Plaintiff Robin Craft ("Plaintiff" or "Craft") appeals the decision of Defendants Prudential Insurance company of America ("Prudential"), Merck-Medco Managed Care ("Managed Care"), and Merck-Medco Managed Care Long-Term Disability Plan ("LTDP") (collectively "Defendants") to terminate her long-term disability benefits.  (Doc. # 1).  The parties have filed cross motions for judgment on the administrative record as well as cross motions for summary judgment.  (Docs. # # 41, 52). With briefing on those matters now complete, the Court turns to an examination of those motions.

Craft was employed as a pharmacist by Managed Care.  Thus, she was eligible for, and participated in, her employer's  LTDP.  In addition to being the LTDP sponsor, Managed Care was the Plan Administrator.  Prudential was the claims fiduciary for the LTDP.

Craft applied for long-term disability benefits under the LTDP for a back injury.  The

plan at issue defined disability to mean "either Total Disability or Partial disability."  (AR 34).

"Total Disability" was defined as:

> "Total Disability" exists when Prudential determines that all of these conditions are met:
>
> (1)    Due to sickness or accidental injury, both of these are true:
>
> > (a)    You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
> >
> > (b)    After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training, or experience. The Initial Duration is shown in the Schedule of Benefits.
>
> (2)    You are not working at any job for wage or profit.  This does not apply to a job with another employer which began prior to your Disability.
>
> (3)    You are under the regular care of a Doctor.

(AR 0034).[1]

In addition, the LTDP defined "Partial Disability" to mean:

> "Partial Disability" exists when Prudential determines that all of these conditions are met:
>
> (1)    Due to Sickness or accidental injury you are not able to perform, for wage or profit, the material and substantial duties of your occupation on a full-time basis.
>
> (2)    You are working for wage or profit:
>
> > (a)    at your own occupation, but you are not able to perform your duties on a full-time basis; or
> >
> > (b)    at another occupation.
>
> (3)    The amount of your monthly earnings is your Partial Disability Earnings.  Your Pre-Disability Earnings are the amount of your monthly Earnings before your period of Disability began.
>
> (4)    You are under the regular care of a Doctor.

*Id.*

_____

[1]"AR" denotes Administrative Record.

Prudential approved her application on November 28, 2000. *Id.* at 209. She received long-term disability from that date until November 7, 2002, when Prudential terminated Craft's benefits. *Id.* at 150-151. Craft twice appealed Prudential's decision to terminate her benefits without success. *Id.* at 138-140; 146-147. This case followed.

Prudential had a bevy of materials at its disposal when it made its decisions to grant Craft's application, terminate her benefits, and deny her appeals. Craft's application for long-term disability benefits was contained within those materials. *Id.* 1131-1134. Her application described her disability as "lower back pain, nerve damage leading to left leg pain and foot drop. Numbness in lower leg and foot." *Id.* at 1131. Craft stated that she could not stand or sit for long periods of time and that she had to lay down when in pain. *Id.* Craft noted that her pain medication makes her drowsy, so she did not feel safe acting as a pharmacist. *Id.* At that time, Craft was taking Percocet, Amitriptyline, Ketorofen, Neuratin, Ultiam, Vioxx, Flexeril, and Ketamme cream. *Id.* at 1132. Her doctor prohibited her from lifting anything more than ten (10) pounds. *Id.* Craft's pain required her husband, father, or sister to cook and to perform yard work. *Id.* at 1133. In addition, Craft had to hire someone to clean and she could not remain in a car for an extended period of time. *Id.* at 1134.

Also contained within Craft's file was a form from July 2000 completed by Rick Long, M.D. ("Long") wherein he indicated that Craft had a herniated disk in her back. *Id.* at 1190. Long was Craft's family physician. Long's limitations on Craft's activities included standing longer than two (2) hours at a time and repeated bending and lifting. *Id.*

That same month, Long referred Craft to Dr. Todd Schulte ("Schulte"), a medical doctor and neurologist. Schulte's office note regarding Craft's October 4, 2000 visit to his office.

3

Schulte conducted a spinal endoscopy on Craft in order to determine the source of her pain. *Id.*

at 667-668. The endoscopy revealed that a large amount of scar tissue in her back had formed as

a result of a previous surgery. *Id.* at 668. Schulte diagnosed Craft with lumbosacral

radiculopathy and post-laminectomy syndrome. *Id.* He prescribed oxycodone and noted that she

could not return to work at that time. *Id.* Craft returned to Schulte's office on November 14,

2000, December 13, 2000, and February 12, 2001. *Id.* at 668-670. During those visits, Schulte

failed to change his diagnosis and prescribed the additional medications of Neurontin, Elavil,

Percocet, and Ketprofen. *Id.* After Craft's February appointment, Schulte concluded:

> At this point Robin is functional with her current medications. I am going
> to continue her on those. Unfortunately I do not think that she can work
> as a pharmacist as she is not able to stand for long periods of time and she
> oftentimes has to go from a sitting to standing position and even has to lie
> down during the course of the day. Unfortunately at this point, unless she
> shows some improvement I would consider her to be disabled from her
> current occupation.

*Id.* at 670.

Schulte's diagnosis remained unchanged as of May 7, 2001, when he noted:

> At this point Robin is going to continue with her current
> medications. . . . With regard to her disability, I do not think the
> patient is ever going to be able to return to work as a pharmacist
> due to the fact that I think she is going to be opioid dependent for
> the rest of her life, and she is not going to be able to function as a
> pharmacist and take chronic oral pain medications.

*Id.* at 671-672.

Prudential enlisted the services of Research Consultants Group, Inc. ("Research

Consultants") to conduct surveillance of Craft. *Id.* at 1121. Research Consultants followed

Craft on October 15, 16, and 18, 2001 and videotaped Craft for a total of almost ten minutes. *Id.*

The surveillance team observed a woman whom they believed to be Craft get mail from the mailbox; drive to the Plain City Druggist, a pharmacy Craft co-owns with her husband; enter her pharmacy; and eat lunch in her car.  *Id.* at 1121-1128.

Peter Stanos, D.O. ("Stanos"), a specialist in pain management, began treating Craft on November 13, 2001 after Schulte retired.  *Id.* at 666, 950.  He diagnosed her with failed spine syndrome on December 6, 2001.  *Id.* at 1094.  He imposed restrictions prohibiting Craft from lifting or carrying anything in excess of five (5) pounds and from standing, sitting, or walking for more than ten (10) minutes at a time.  *Id.*  Stanos based his diagnosis on Craft's comments as well as results of tests.  *Id.*

Prudential ordered Craft to undergo an independent medical examination ("IME") on January 11, 2002.  *Id.* at 950.  Orthopedic surgeon John S. Wolfe, M.D. ("Wolfe") conducted the examination.  *Id.*  Wolfe physically examined Craft and reviewed a magnetic resonance imaging report from May 31, 2000.  *Id.* at 951.  Because Craft was experiencing pain, Wolfe did not conduct range of motion testing on Craft's spine.  *Id.*

Wolfe completed a report detailing the results of his examination.  His report stated:

> Understanding the patient's job description, I do not feel she can perform her job as a pharmacist for Merck-Medco at this time.  I do not feel she can sustain full-time employment in any other job as well.  I feel this patient's ability to stand and walk is limited to one or two hours per day, and her ability to sit is limited to 30 minutes per occasion in two to four hours a day. Her ability to lift is limited to five pounds occasional, but no frequent lifting.  She has lost the ability to bend at the waist beyond occasionally.  She has also lost the ability to kneel, squat, climb ladders, and work in unprotected heights.  Her medications also produce interference with employability in all capacities and those meds include Percocet, Topomax, Amitriptyline, and likely Provigil as well.  I feel this patient has post-laminectomy syndrome, and there is no good treatment for this patient's problem in my experience.  My

5

> prognosis for improvement in this patient in the future, even with
> her current treatment, is very guarded for any significant
> improvement.

*Id.* at 951.

On March 18, 2002, Stanos diagnosed her with failed spine syndrome, "lumbar DDD,"

and lateral recess stenosis.  *Id.*  Stanos prescribed Percocet, Provigial, Topamax, Vioxx, and

Elavil for Craft.  *Id.* at 661-665.  Subsequent office visits in May and June 2002 revealed that the

pain management plan was working.  *Id.*

Research Consultants conducted additional surveillance of Craft on May 9, 2002 for

seven and a half hours.  *Id.* at 938-941.   Research Consultants videotaped Craft for three

minutes.  The individuals conducting the surveillance saw Craft drive to the Plain City Druggist,

pick up a child, stop at a gas station, and go to a relative's house.  *Id.*

Craft returned to Stanos on July 16, 2002 and complained of numbness in her hip and

behind and difficulty walking.  *Id.* at 661.  Stanos scheduled Craft for an MRI on July 23, 2002.

*Id.* at 659.  The MRI results indicated "posterior disc protrusion at L5-S1 that abuts the S1 nerve

roots and mildly deforms the left nerve root."  *Id.* at 659.  The MRI report also found a

> loss of intervertebral disc height and signal at the L4-5 and L5-S1
> level, compatible with degeneration.  The vertebrae are of normal
> height and signal.  There is a few millimeters of retrolisthesis of L5
> on S1.  At L5-S1, there is a posterior disc protrusion measuring 4-5
> mm in thickness and abutting the S1 nerve roots and mildly
> deviating the left S1 nerve root.  The dural sac is not compromised.
> . . . At L4-5, there have been bilateral laminectomies.  No disc
> bulges or protrusion or evidence of epidural scar formation is seen.

*Id.* at 659-670.  Craft returned to Stano's office on July 26, 2002 and Stanos added the diagnosis

of a herniated disk in her back.  *Id.* at 661.

6

Stanos referred Craft to board certified neurosurgeon Robert Dixon, D.O. for a spine

consultation on August 9, 2002. *Id.* at 295-296. Dixon reviewed the results of Craft's July 23,

2002 MRI and conducted a physical examination. Dixon concluded that Craft had a herniated

disc in her back, peridural fibrosis, retrolisthesis of L5 and S1, and post-laminectomy syndrome.

*Id.* He noted that Craft had experienced significant improvement with chiropractic manipulative

therapy. *Id.* Dixon did not feel surgery was necessary and urged Craft to maintain her pain

management plan. *Id.*

On September 12, 2002, the Social Security Administration determined that Craft was

totally disabled since May 26, 2000. *Id.* at 688, 692. Specifically, the Administrative Law Judge

concluded:

> Dr. Ernest Johnson, a physiatrist, testified as medical advisor at
> the hearing and indicated that the objective medical findings met
> the degree of severity and requirements of disability found in
> Medical Listing 1.4 A. Dr. Johnson pointed to the findings of
> reflex loss, left leg weakness, decreased range of motion, and the
> positive finding on MRI of the disk herniation and radiculopathy at
> the disk level below that of the previous surgery. [Craft's]
> appearance at the hearing also was indicative of her condition as
> she walked very slowly, with weight to one side, and was
> uncomfortable sitting after a few moments. [Craft] testified to
> reduced daily activities because of her back pain, requiring support
> and assistance from her spouse for most household and personal
> activities.
> Given [Craft's] testimony . . . that I find to be totally credible, and
> the opinion of the medical advisor that is supported by objective
> medical signs and symptoms in the record, I find the claimant
> disabled within the meaning of the Social Security Act, Rules and
> Regulations.

*Id.* at 693.

Several days later, Stanos referred Craft to Mary Ann Everhart-McDonald, M.D.

("McDonald"), who was board certified in electromyography and physical medicine and

7

rehabilitation.  *Id.* at 355.  McDonald's September 19, 2002 physical examination of Craft

revealed an "extremely limited" range of motion because of her pain.  *Id.* at 356-357.  McDonald

also conducted electro-diagnostic testing on Craft and concluded that there was

> evidence of a sensory more than motor peripheral neuropathy in
> the lower limbs with some ratchety resistance found in the hip
> flexors bilaterally.  Sensation [was] decreased bilaterally in the
> medial and lateral shin as well as in both feet. . . . The normal H-
> reflex helps rule out even the subtle S1 radiculopathy.

*Id.*  Lastly, McDonald noted that medication made Craft's chronic pain manageable.  *Id.*

Prudential enlisted the Parman Group ("Parman") to conduct an employability

assessment on October 29, 2002.  *Id.* at 824.  In other words, Parman was charged with

researching job openings for sedentary pharmacist positions.  *Id.* at 825.  How and why

Prudential determined that Craft was able to perform such a job is unclear.  Parman located three

companies within fifty (50) miles of Craft's home that employed sedentary pharmacists, and also

identified seven (7) employers with current openings for that type of a position.  *Id.*

Prudential terminated Craft's long term disability benefits on November 7, 2002, citing

Parman's employability assessment as proof that Craft could find employment as a sedentary

pharmacist while adhering to doctor-imposed restrictions.  *Id.* at 150.  Craft appealed that

decision on November 22, 2002 but did not provide any additional medical evidence to support

her application.  Prudential reviewed Craft's file and concluded that the medical evidence

supported "a functional capacity to perform her own occupation on a part time basis of

approximately six hours per day.  As this would result in earnings greater than 60%, she no

longer meets the definition of disability from any gainful occupation."  *Id.* at 147.  Consequently,

Prudential denied her appeal on December 11, 2002.  *Id.*

Craft had her own employability assessment completed by Vocare Services on July 29, 2003. *Id.* at 650.  The purpose of the examination was to evaluate Craft's ability to "assess the labor market [with her] permanent conditions that impair her ability to function." *Id.*  Caroline Wolfe conducted the examination.  Ms. Wolfe considered Craft's medical records and met with Craft.  *Id.* at 650-654.  Ms. Wolfe concluded that Craft was:

> not capable of work even within the Sedentary strength range because of her need to lie down during the day, to change positions frequently, and because of frequent fatigue from the medication she takes to reduce her pain.  She is not able to perform even activities of daily living, several of which she has to hire done [sic] including cleaning and laundry, and the rest her husband does.  Her general condition varies from day to day and on bad days at least once a week), she cannot stay out of bed, so that she could not reliably attend work.  Her fatigue and back pain prevent reliability, focus and attention to detail, and a competitive work rate.  It is the opinion of this counselor that Mrs. Craft is not capable of sustained remunerative employment in any position.
>
> The opinions expressed above are based on my interview with Mrs. Craft, a review of medical records, consultation with her physicians, consideration of the labor market demands, and my education and experience as a vocational rehabilitation counselor.

*Id.* at 653.  Ms. Wolfe noted that Craft's skills and limitations allowed her to seek jobs as a manicurist or travel agent.  *Id.*

Craft then filed a second appeal.  She provided her medical records, SSA determination letter, and Ms. Wolfe's vocational review with her notice of appeal.  *Id.* at 139. While that appeal was pending, Prudential's Medical Director, Joyce Bachman, M.D. ("Bachman"), reviewed Craft's appeal file on September 2, 2003.  *Id.* at 121-126.  Bachman did not examine Craft.  *Id.* After summarizing the numerous doctors' notes and diagnoses, Bachman concluded that Craft was "capable of performing a part time sedentary pharmacy job with 'Activity Mix.'  No prolonged sitting, standing, or walking.  No repetitive bending or twisting of the trunk.  No

9

lifting [more than] 5 pounds." *Id.* at 126.

Prudential denied Craft's second appeal on September 18, 2003. *Id.* at 138. Prudential's

letter informing Craft of its decision stated the:

> current medical information in file does not provide evidence of
> any sickness or injury which would prevent Ms. Craft from
> performing duties of a sedentary occupation on a part-time basis.
> In addition, we have identified several jobs in which Ms. Craft
> would be gainfully employed within these restrictions and
> limitations. Therefore, we must uphold our previous decision to
> terminate LTD benefits effective November 7, 2002.

*Id.* at 139.

Craft filed her Complaint in this matter on October 31, 2003. (Doc. # 1). Craft alleges

that the Defendants violated 29 U.S.C. § 1132(a)(1)(B) of ERISA and also asserts that Prudential

breached its fiduciary duty to provide her a copy of the employee benefit plan documents that

Prudential utilized to evaluate Craft's application for benefits and her subsequent appeals. *Id.* at

¶ ¶ 16-26. Craft seeks benefits due her under the plan, restoration of other benefits lost because

of Prudential's denial of disability, an order requiring Prudential to furnish a copy of plan

documents to all plan participants who so request in connection with a claim for benefits, pre-

and post-judgment interest, and attorney's fees and costs. *Id.* at ¶ ¶ A-G. Prudential denies its

actions violated § 1132 and also denies that it breached a fiduciary duty to Craft. (Doc. # 2).

The parties filed cross motions for judgment on the administrative record on Craft's

ERISA claim, and the parties also filed cross motions for summary judgment on Craft's fiduciary

duty claim. (Docs. # # 41, 52). Because the Sixth Circuit held "the concept of summary

judgment is inapposite to the adjudication of an ERISA action," the Court shall address each

claim separately. *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619 (6th Cir. 1998).

I.       **CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

      A.       **STANDARD OF REVIEW**

      "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 505-506 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).   If the plan provides the administrator with discretion then "the highly deferential arbitrary and capricious standard of review is appropriate."  *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998).   However, "the arbitrary and capricious ... standard does not require [the Court] merely to rubber stamp the administrator's decision."  *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).  Under the arbitrary and capricious standard, a plan administrator's decision will not be deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome."  *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (noting that "the arbitrary and capricious standard is the least demanding form of judicial review").  The Court must "review the quantity and quality of the medical evidence and the opinions on both sides of the issues."  *Jones*, 385 F.3d at 661.  In other words, a court will uphold a benefit determination if it is "rational in light of the plan's provisions."  *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th  Cir. 1996).

      The Sixth Circuit does not require a plan to use certain magic words to create discretionary authority for a plan administrator in administering the plan.  *Johnson v. Eaton*

*Corp.*, 970 F.2d 1569, 1572 at n.2 (6th Cir. 1992). Yet the Sixth Circuit does insist upon "a clear grant of discretion [to the administrator]" before replacing *de novo* review with the arbitrary and capricious standard. *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994).

In the case *sub judice*, the policy at issue requires insureds to complete a claim form and submit proof of the asserted disability to Prudential. (AR 75). The plan identifies what information is required as proof of a claim, and states that Prudential "may request that [insured] send proof of continuing disability, satisfactory to Prudential, indicating that [insured is] under the regular care of a doctor." *Id.* Clearly, then, the plan gives Prudential discretion and the Court holds that the arbitrary and capricious standard of review applies to the instant matter. *See Perez v. Aetna Life Ins. Co.*,150 F.3d 550 (6th Cir. 1998); *Miller v. Met Life Ins. Co.*, 25 F.2d 979, 984 (6th Cir. 1994).

The Court is required to consider only the facts known to the plan administrator at the time the final decision was made to deny long-term disability benefits. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378-379 (6th Cir. 2005); *see also Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). In this case, that date is September 18, 2003. *Moon*, 405 F.3d at 379; (AR 138-140).

### B.    PRUDENTIAL'S TERMINATION OF CRAFT'S BENEFITS

Plaintiff asserts that the Court should take into account two factors in determining whether the denial of benefits was arbitrary and capricious, including: (1) Prudential's conflict of interest; and (2) the Social Security Administration's determination that Plaintiff is disabled.

12

(Doc. # 52 at 12-13; Doc. # 54 at 13).  The Court will address each of these issues separately.

### 1.    Conflict of Interest

Craft asserts that because Prudential is the claim fiduciary and the payor of benefits under the LTDP, there is a conflict of interest.  (Doc. # 54 at 13).[2]  Prudential fails to argue with Craft's assertion, and it appears to the Court that Prudential serves both capacities.  (AR 50-83; 138). Thus, the Court concludes that a conflict exists.  *See Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998).

In this situation, the Sixth Circuit advises that the conflict does not alter the standard of review.  *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 506 (6th Cir. 2005).  Rather, the existence of a conflict merely becomes a factor in the Court's review of Prudential's decision to terminate Craft's long-term disability benefits.  *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (citing *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n. 4 (6th Cir. 2000)).

### 2.    Social Security Disability Determination

Craft posits that Prudential failed to consider the Social Security Administration's ("SSA") determination that Craft was disabled.  (Doc. # 52 at 12-13).  Prudential's letter to Craft informing her of its decision to deny her second appeal specifically mentions the determination. (AR 140; Doc. # 41 at 20-21; Doc. # 53 at 8-9).  This conclusively establishes that Prudential did consider the SSA's determination.

---

[2] The Administrative Record in this case is more than 1,000 pages long. Yet, neither party cited to specific pages that identified the portion of the plan that addressed the conflict issue. As a result, the Court had to expend a considerable amount of time locating the proper documents in the record.  In the future, the Court would appreciate the courtesy of page citations.

The Court is compelled to note, however, that the SSA's determination does not, standing alone, require the conclusion that Prudential's termination of benefits was arbitrary and capricious.  *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005).  The SSA determination to award benefits to Craft is, instead, just one factor the Court should consider in the context of the record as a whole, in determining whether Prudential's contrary decision was arbitrary and capricious.  *Id.*

### 3.     Craft's back injury

Craft contends that she has satisfied her burden of establishing that she is disabled under the terms of the plan.[3]  (Doc. # 52 at 12; Doc. # 54 at 13-18).  Conversely, Prudential maintains that Craft has failed to establish her burden because the records it had indicated that Craft's condition was improving.  (Doc. # 41 at 10, 14-19; Doc. # 53 at 3-14; AR 125).

The central issue is whether Craft's evidence satisfies the LTDP's definition of total disability.  Again, total disability exists under the Plan when Prudential determines that all of the following conditions are met:

"Total Disability" exists when Prudential determines that all of these conditions are met:

(1)     Due to sickness or accidental injury, both of these are true:

(a)     You are not able to perform, for wage or profit, the material and substantial duties of your occupation.

(b)     . . . [Y]ou are not able to perform for wage or profit the material and substantial duties of any job for which you are

---

[3] The plan requires Craft to submit satisfactory proof of continuing disability to Prudential. (AR 75).  Accordingly, the burden is on Craft to establish continuing disability.  *See Scott v. Prudential Ins. Co.*, No. 4:03-CV-138, 2005 U.S. Dist. LEXIS 12551, **14-15 (W.D. Mich. Jan. 24, 2005) (holding same under nearly identical plan language).

reasonably fitted by your education, training, or experience.
. . .

(2)    You are not working at any job for wage or profit.  This does not
apply to a job with another employer which began prior to your
Disability.

(3)    You are under the regular care of a Doctor.

(AR 34).

### i.    Craft is not working at any job for wage or profit.

Prudential intones that Craft was working at the City Druggist while her application for

benefits was pending.  However, Prudential offers no evidence to support that contention other

than its statement that Craft spent a substantial amount of time in the store one day.  Prudential

fails to produce any documents showing that Craft earned wages from the store.  Accordingly,

the Court concludes that Craft was not working at any job for wage or profit.

### ii.    Craft was under the regular care of a doctor.

The Court's recitation of the administrative record above establishes that Craft was under

the regular care of several doctors, and Prudential does not contest this conclusion.

### iii.    Craft is not able to perform the material duties of her occupation and is not able to perform the material duties of any job for which she is reasonably fitted by her education, training, and experience.

The administrative record before Prudential unequivocally established that Craft was

unable to perform, for wage or profit, the material and substantial duties of her position as a

pharmacist.  Due to her back injury, Long, Schulte, Stanos, and Wolfe prohibited her from

sitting, standing, or bending for extended periods of time and from lifting anything more than five (5) pounds.  (AR 1190, 670, 951, 1094, 1190).  Although the parties failed to pinpoint Craft's job description within the record, the Court is confident that pharmacists must frequently sit, stand, bend, reach, and lift in the ordinary course of their profession.

Craft's doctors felt that such restrictions were necessary given their diagnosis of Craft's condition.  Specifically, Schulte diagnosed Craft with lumbosacral radiculopathy and post-laminectomy syndrome.  *Id.* at 668.  Schulte prescribed Oxycodone, Neurontin, Elavil, Percocet, and Ketprofen for Craft.  *Id.* at 668-670. After Craft's February 2001 appointment, Schulte concluded:

> At this point Robin is functional with her current medications.  I am going to continue her on those.  Unfortunately I do not think that she can work as a pharmacist as she is not able to stand for long periods of time and she oftentimes has to go from a sitting to standing position and even has to lie down during the course of the day.  Unfortunately at this point, unless she shows some improvement I would consider her to be disabled from her current occupation.

*Id.* at 670.

Schulte's diagnosis remained unchanged as of May 7, 2001, when he noted:

> At this point Robin is going to continue with her current medications. . . . With regard to her disability, I do not think the patient is ever going to be able to return to work as a pharmacist due to the fact that I think she is going to be opioid dependent for the rest of her life, and she is not going to be able to function as a pharmacist and take chronic oral pain medications.

*Id.* at 671-672.

Stanos began treating Craft on November 13, 2001 after Schulte retired.  *Id.* at 666, 950.

16

He diagnosed her with failed spine syndrome on December 6, 2001.  *Id.* at 1094.  Stanos noted

that physical therapy and epidural injections failed to aid Craft's pain and concluded that Craft

may need more surgery.  *Id.* at 1093.

On January 11, 2002, Wolfe, Prudential's independent medical examiner, examined Craft

and concluded:

> Understanding the patient's job description, I do not feel she can perform
> her job as a pharmacist for Merck-Medco at this time.  I do not feel she can
> sustain full-time employment in *any* other job as well.  I feel this patient's ability
> to stand and walk is limited to one or two hours per day, and her ability to sit is
> limited to 30 minutes per occasion in two to four hours a day. Her ability to lift is
> limited to five pounds occasional, but no frequent lifting.  She has lost the ability
> to bend at the waist beyond occasionally.  She has also lost the ability to kneel,
> squat, climb ladders, and work in unprotected heights.  Her medications also
> produce interference with employability in *all* capacities and those meds include
> Percocet, Topomax, Amitriptyline, and likely Provigil as well.  I feel this patient
> has post-laminectomy syndrome, and there is no good treatment for this patient's
> problem in my experience.  My prognosis for improvement in this patient in the
> future, even with her current treatment, is very guarded for any significant
> improvement.

*Id.* at 951 (Emphasis Added).

On March 18, 2002, Stanos diagnosed Craft  with failed spine syndrome, "lumbar DDD,"

and lateral recess stenosis.  *Id.*  Stanos prescribed Percocet, Provigial, Topamax, Vioxx, and

Elavil for Craft.  *Id.* at 661-665.  Subsequent office visits in May and June 2002 revealed that the

medications were working.  *Id.*  Craft returned to Stanos on July 16, 2002 and complained of

numbness in her hip and behind and difficulty walking.  *Id.* at 661.  Stanos scheduled Craft for

an MRI on July 23, 2002.  *Id.* at 659.  The MRI results indicated "posterior disc protrusion at L5-

S1 that abuts the S1 nerve roots and mildly deforms the left nerve root."  *Id.* The MRI report also

found a:

> loss of intervertebral disc height and signal at the L4-5 and L5-S1
> level, compatible with degeneration.  The vertebrae are of normal
> height and signal.  There is a few millimeters of retrolisthesis of L5
> on S1.  At L5-S1, there is a posterior disc protrusion measuring 4-5
> mm in thickness and abutting the S1 nerve roots and mildly
> deviating the left S1 nerve root.  The dural sac is not compromised.
> . . . At L4-5, there have been bilateral laminectomies.  No disc
> bulges or protrusion or evidence of epidural scar formation is seen.

*Id.* at 659-670.

Dixon reviewed the results of Craft's July 23, 2002 MRI and physically examined Craft.

*Id.* at 295-296.  Dixon concluded that Craft had a herniated disc in her back, peridural fibrosis,

retrolisthesis of L5 and S1, and post-laminectomy syndrome.  *Id.*  Although Dixon did not feel

surgery was necessary, he urged Craft to continue taking her medications.  *Id.*  Craft returned to

Stano's office on July 26, 2002 and Stanos added the diagnosis of a herniated disk in her back.

*Id.* at 661.

In addition, Dr. Ernest Johnson, a physiatrist, testified at Craft's Social Security

Disability hearing.  The Administrative Law Judge summarized Johnson's testimony as follows:

> Dr. Ernest Johnson, a physiatrist, testified as medical advisor at
> the hearing and indicated that the objective medical findings met
> the degree of severity and requirements of disability found in
> Medical Listing 1.4 A.  Dr. Johnson pointed to the findings of
> reflex loss, left leg weakness, decreased range of motion, and the
> positive finding on MRI of the disk herniation and radiculopathy at
> the disk level below that of the previous surgery. [Craft's]
> appearance at the hearing also was indicative of her condition as
> she walked very slowly, with weight to one side, and was
> uncomfortable sitting after a few moments. [Craft] testified to
> reduced daily activities because of her back pain, requiring support
> and assistance frm her spouse for most household and personal

activities.

*Id.* at 693.  Based upon the record, testimony at the hearing, and her experience, the

Administrative Law Judge determined  "Given [Craft's] testimony . . . that I find to be totally

credible, and the opinion of the medical advisor that is supported by objective medical signs and

symptoms in the record, I find the claimant disabled within the meaning of the Social Security

Act, Rules and Regulations."  *Id.*

McDonald physically examined Craft and also conducted electro-diagnostic testing on

Craft.  *Id.* at 355.   Her examination of Craft revealed an "extremely limited" range of motion

because of her pain.  *Id.* at 356-357.  McDonald noted that medication made Craft's chronic pain

manageable.  *Id.*

Prudential terminated Craft's long term disability benefits on November 7, 2002.

Prudential reviewed Craft's file and concluded that the medical evidence supported "a functional

capacity to perform her own occupation on a part time basis of approximately six hours per day.

As this would result in earnings greater than 60%, she no longer meets the definition of disability

from any gainful occupation."  *Id.* at 147.  Bachman later concluded that Craft was "capable of

performing a part time sedentary pharmacy job with 'Activity Mix.'  No prolonged sitting,

standing, or walking.  No repetitive bending or twisting of the trunk.  No lifting [more than] 5

pounds."  *Id.* at 126.  Incredibly, Bachman failed to comment on the effect Craft's prescription

medication regime would have on Craft's ability to stay focused and awake while working.

The court is unaware of *any* medical evidence in the record that supports Prudential's

conclusion.  As elucidated above, Craft's doctors prescribed a number of potent pain

medications for her.  Those medications include Oxycodone, Neurontin, Elavil, Percocet, and
Ketprofen.   Each of the doctors that examined her noted that her condition was manageable as
long as she took her medication.  The pain killers, however, obviously prevent  Craft from
focusing, remaining alert, concentrating, and staying awake, traits that are especially necessary
and material in a profession involving the distribution of pharmaceuticals.  In fact, Schulte noted
"I do not think the patient is ever going to be able to return to work as a pharmacist due to the
fact that I think she is going to be opioid dependent for the rest of her life, and she is not going to
be able to function as a pharmacist and take chronic oral pain medications."  *Id.* at 671-672.
Consequently, the Court concludes that Prudential's decision to terminate Craft's long term
disability benefits was arbitrary and capricious.

Prudential's video surveillance does nothing to change this result.  First, neither party is
able to confirm whether the woman who appears in the tapes is Craft.  Second, even assuming
that the subject in the videos is Craft, Research Consultants only videotaped her for a total of
seventeen (17) minutes over a period of four (4) days.  This minuscule amount of supposed
surveillance fails to serve as a truly representative sampling of Craft's daily activities.

Furthermore, the administrative record establishes that Prudential's decision that Craft
was capable of performing a sedentary pharmacist position was arbitrary and capricious.  *Id.* at
139.  Parman's employability assessment merely researched job openings for sedentary
pharmacist positions within a fifty (50) mile radius of Craft's residence.  *Id.* at 825.  Surely, even
a sedentary pharmacist must be lucid and free from the influence of opioids.  Craft's condition
and resultant medications prohibit her from being able to perform a material aspect of a
sedentary pharmacist–that is, remaining lucid and alert.

20

Moreover, Wolfe concluded that Craft's condition prohibited her from performing *any* job.   Specifically, Wolfe concluded that he did not "feel [Craft] can sustain full-time employment in *any* . . . job as well." *Id.* at 951.   Wolfe concluded Craft's:

> ability to stand and walk is limited to one or two hours per day, and her ability to sit is limited to 30 minutes per occasion in two to four hours a day. Her ability to lift is limited to five pounds occasional, but no frequent lifting.  She has lost the ability to bend at the waist beyond occasionally.  She has also lost the ability to kneel, squat, climb ladders, and work in unprotected heights.  Her medications also produce interference with employability in *all* capacities and those meds include Percocet, Topomax, Amitriptyline, and likely Provigil as well.

*Id.* (Emphasis added).   Ms. Wolfe's conclusion mirrored Wolfe's.  Ms. Wolfe's report stated that Craft was:

> not capable of work even within the Sedentary strength range because of her need to lie down during the day, to change positions frequently, and because of frequent fatigue from the medication she takes to reduce her pain.  She is not able to perform even activities of daily living, several of which she has to hire done [sic] including cleaning and laundry, and the rest her husband does. Her general condition varies from day to day and on bad days (at least once a week), she cannot stay out of bed, so that she could not reliably attend work.  Her fatigue and back pain prevent reliability, focus and attention to detail, and a competitive work rate.  It is the opinion of this counselor that Mrs. Craft is not capable of sustained remunerative employment in *any* position.

*Id.* at 653 (Emphasis Added).[4]

The conclusions of Wolfe and Ms. Wolfe are unrebutted in the record and conclusively

---

[4] Ms. Wolfe noted that Craft's skills and limitations allowed her to seek jobs as a manicurist or travel agent.   (AR 653).  However, there is no evidence in the record that such jobs would provide her with an income "equal to at least 60% of [Craft's] indexed monthly earnings within 12 months of her return to work."  *Id.* at 138.  Furthermore, such jobs are an unreasonable fit for Craft because of her education, training, and experience.  *Id.*

establish that Craft is not able to perform the material duties of any job for which she is

reasonably fitted by her education, training, and experience.   Thus, it is not possible to offer a

rational, reasoned explanation, based on the evidence, for Prudential's denial of Craft's benefits.

*Davis*, 887 F.2d at 693; *Yeager v. Reliance Standard Life Insurance Co.*, 88 F.3d 376 (6th Cir.

1996).  Prudential's decision to ignore those determinations when deciding whether Craft

satisfied the LTDP's definition of disabled was therefore arbitrary and capricious.   The Court

**GRANTS** Crafts motion for judgment on the record and **ORDERS** Prudential to pay Craft

benefits due her under the LTDP, plus appropriate pre- and post-judgment interest, in one lump

sum.  (Doc. # 52).  Defendants are further **ORDERED** to restore any other benefits Craft lost as

a result of Prudential's denial of her LTDP claim.

## II.       CROSS-MOTIONS FOR SUMMARY JUDGMENT

Craft's remaining claim is that Prudential breached its fiduciary duty under 29 U.S.C. § §

1132(a)(2), 1132(a)(3), and 1133 to provide her with a copy of the insurance policy governing

her claim.  (Doc. # 1 at ¶ ¶ 20-26).  The parties stipulate that the Court may decide this claim

based on the filings and that no trial is needed to resolve this claim.  (Docs. # # 51, 59, 60).

### A.       STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  The Court must therefore grant a motion for summary

judgment if the nonmoving party who has the burden of proof at trial fails to make a showing

sufficient to establish the existence of an element that is essential to that party's case.  *See*

*Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52). However, in ruling on a motion for summary judgment, "a district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## B. DISCUSSION

The Court will address Craft's grounds for her breach of fiduciary duty claim separately.

### 1. 29 U.S.C. 1132(a)(2)

Craft first asserts that Prudential breached its fiduciary duty pursuant to 29 U.S.C. § 1132(a)(2). (Doc. # 1 at ¶ ¶ 21, 22). However, relief under § 1132(a)(2) is available only to the plan and not to individual participants and fiduciaries. *Massachusetts Mut. Life Ins. Co. v.*

23

*Russell*, 473 U.S. 134, 140 (1985); *Bagsby v. Central States*, 162 F.3d 424, 430 (6th Cir. 1998);

*Ramsey v. Formica Corp.*, No. 1:04-CV-49, 2004 WL 1146334, * 4 (S.D. Ohio Apr. 6, 2004).

Consequently, the Court **GRANTS** Prudential's motion for summary judgment on this claim.

(Doc. # 41).

### 2.        29 U.S.C. § 1132(a)(3) &  29 U.S.C. § 1133

Craft's claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) is that Prudential

owed her a duty pursuant to two of the Department of Labor's administrative regulations that

implement 29 U.S.C. § 1133.  (Doc. # 52 at 9).  The first regulation is 29 C.F.R. § 2560.503-

1(h)(2)(I), which states:

> (h) Appeal of adverse benefit determinations.
> (2) Full and fair review. Except as provided in paragraphs (h)(3)
> and (h)(4) of this section, the claims procedures of a plan will not
> be deemed to provide a claimant with a reasonable opportunity for
> a full and fair review of a claim and adverse benefit determination
> unless the claims procedures –
>
> (iii) Provide that a claimant shall be provided, upon request and
> free of charge, reasonable access to, and copies of, all documents,
> records, and other information relevant to the claimant's claim for
> benefits. Whether a document, record, or other information is
> relevant to a claim for benefits shall be determined by reference to
> paragraph (m)(8) of this section . . .

29 C.F.R § 2560.503-1(h)(2)(I).  Paragraph (m)(8) provides:

> (m) Definitions. The following terms shall have the meaning
> ascribed to such terms in this paragraph (m) whenever such term is
> used in this section:
>
> (8) A document, record, or other information shall be considered
> "relevant" to a claimant's claim if such document, record, or other information
>
> (I) Was relied upon in making the benefit determination;

(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

(iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8).

Unfortunately for Craft, Employee Retirement Income Security Act of 1974, Rules and Regulations for Administration and Enforcement & Claims Procedure, 65 Fed. Reg. 70246 (Nov. 21, 2000), establishes that those regulations apply to all claims filed on or after January 1, 2002. Craft filed her application on May 25, 2000 and Prudential approved her application on November 22, 2000.  (AR 209, 215, 216, 1195, 1198, 1201).   Craft fails to contest this.  (Doc. # # 52, 54).  The cited regulations are therefore inapplicable to the case at bar and the Court **GRANTS** Prudential's motion for summary judgment on this claim.  (Doc. # 41).

### 3.    Common Law

Craft asserts a common law claim for breach of fiduciary duty for the first time in her motion for summary judgment.  (Doc. # 1; Doc. # 52 at 8, 10-11; Doc. # 54 at 3-5).[5]  Craft's

---

[5] In fact, Craft's Complaint states that she brings "this claim for breach of fiduciary duty under 29 U.S.C. § § 1132(a)(2) and for violation of ERISA under 29 U.S.C. § 1132(a)(3)." (Doc. # 1 at ¶ 21).

Case: 2:03-cv-01007-GLF-NMK Doc #: 61 Filed: 02/28/06 Page: 26 of 28 PAGEID #: 542

Complaint is devoid of such a claim; consequently, her motion fails to cite to the specific portion of her Complaint that raises that claim. The Court cannot and will not consider what Craft failed to raise in her Complaint.

## III.     CROSS MOTIONS FOR ATTORNEY'S FEES

### A.     *KING* FACTORS

Both sides move for attorney's fees under 29 U.S.C. § 1132(g)(1). (Doc. # 41 at 30; Doc. # 1 ¶ F). That section states "the court in its discretion may allow a reasonable attorney's fees and costs of action to either party." In exercising this discretion the Sixth Circuit has made it clear that there is no presumption that attorney's fees will be awarded to a beneficiary who wins an ERISA action. *Foltice v. Guardsman Prods.*, 98 F.3d 933, 936 (6th Cir. 1996). Instead, district courts have followed the following factors when deciding whether to award attorney's fees:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party, requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Department of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). These factors, "sometimes referred to ... as the 'King factors,'... are not statutory, of course, and . . . simply summarize considerations that have sometimes been deemed significant in other cases . . . ." *Foltice*, 98 F.3d at 937.

**B.     MOTIONS ARE DENIED**

After analyzing the *King* factors, the Court finds that awarding attorney's fees to Prudential and Craft is not warranted in this action.  First, although the Court holds that the decision to terminate Craft's benefits is "arbitrary," the Court does not find that Prudential has acted in bad faith.  Prudential attempted to ascertain Craft's condition, *inter alia*, by seeking Wolfe's opinion through an IME and having Bachman review Craft's appeal file.  Therefore, even though the Court finds that Prudential's decision to terminate Craft's benefits is arbitrary, the Court does not find that it "evidences a degree of culpability approaching bad faith." *Id.* Second, because the Court finds that Prudential's defense that Craft's condition had been improving has some, albeit small, merit, awarding attorney's fees will not serve as a deterrent in future circumstances, and finally, Craft's claim for benefits does not seek "to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve significant legal questions regarding ERISA."   Lastly, while Craft's fiduciary duty claim did seek to confer a common benefit on all participants by having the Court order Prudential to provide participants with a copy of the policy, Craft did not prevail on that claim.  Therefore, the Court will deny both requests for attorney's fees and costs.

## <u>CONCLUSION</u>

Craft's motion for judgment on the administrative record is **GRANTED**.  (Doc. # 52). Craft's motion for summary judgment is **DENIED**.  *Id.*  Craft's motion for attorney's fees is **DENIED**.  *Id.*  Prudential's motion for judgment on the administrative record is **DENIED**. (Doc. # 41).  Prudential's motion for summary judgment is **GRANTED**.  *Id.*  Prudential's

motion for attorney's fees is **DENIED**.  *Id.*

      **IT IS SO ORDERED.**


                  _/s/_  Gregory L. Frost             

                  **GREGORY L. FROST**
                  **UNITED STATES DISTRICT JUDGE**